UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
) Criminal No. 04-30001-MAP
)
v. )
)
RAYMOND SHAVER, )
    Defendant. )

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned attorneys, submits the following Sentencing Memorandum.

I.  Background

The defendant was charged in a six count Indictment with possessing with intent to distribute fifty grams or more of cocaine base on the following dates: June 25, 2003 (Count One), August 1, 2003 (Count Three), August 28, 2003 (Count Four), and September 26, 2003 (Count Five). He was also charged with conspiring to possess with intent to distribute fifty grams or more of cocaine base between June of 2003 and January 13, 2004, (Count Six). Finally he was charged with possessing with intent to distribute cocaine on July 17, 2003 (Count Two). The government filed an Information pursuant to 21 U.S.C. § 851 indicating it would rely upon the defendant's eight previous drug distribution convictions at sentencing.

The defendant pled guilty to possessing with intent to

1

distribute or distributing a total of 518.0 grams of cocaine base in the form of crack cocaine (98.4 grams of cocaine base in the form of crack cocaine, Count One; 98.8 grams of cocaine base in the form of crack cocaine, Count Three; 99.2 grams of cocaine base in the form of crack cocaine, Count Four; and 98.5 grams of cocaine base in the form of crack cocaine, Count Five), and 123.8 grams of cocaine (Count Two). The government proffered at the change of plea hearing that the government's witnesses at trial would have testified that, based upon their training and experience in investigating narcotics cases, the substance in Counts One, Three, Four, Five and Six was crack cocaine.

As set forth in the PSR, the defendant's conviction on Counts One, Three, Four, Five and Six combined with the filing of the § 851 Information results in a mandatory statutory sentence of life. Further, pursuant to U.S.S.G. § 5G1.1(b) the defendant's guideline sentence is also life.[1]

The defendant plead guilty on the first day of trial and there is no plea agreement in this case.

---

[1] "Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." § 5G1.1(b). Because the defendant has previously been convicted of seven drug distribution felonies and a violent felony, his sentencing guideline range as a Career Offender, with a three level reduction for acceptance of responsibility would have been OL 34, CHC VI with a range of 262 months to 327 months.

2

II. Argument

This Court has recently found that the definition of cocaine base in 21 U.S.C. § 841(b)(1) should be found to encompass the same definition set forth in U.S.S.G. § 2D1.1(c), that is that the government must prove the substance is cocaine base in the form of crack cocaine. See this Court's Supplemental Statement of Reasons in United States v. Gregory Thomas, Cr. No. 03-30033-MAP, March 14, 2005; and United States v. Radell Hubbard, Cr. No. 03-30021-MAP, April 25, 2005. The Court found in those cases that the First Circuit's decision in United States v. Richardson, 225 F.3d 46, 50 (1st Cir. 2000) regarding that issue was not controlling and that if the First Circuit were to decide the issue it would agree with several other Circuits which have similarly ruled. The government objects to this decision and urges the Court to find that definition of cocaine base in 21 U.S.C. § 841(b)(1) is broader than the definition set forth in U.S.S.G. § 2D1.1(c), that is, pursuant to § 841(b), the government must only prove the substance is cocaine base.

The Court's decision in the Thomas and Hubbard cases that the First Circuit's decision in Richardson on this point is not controlling is incorrect.

In Richardson, the Court noted that the appellants raised "the following issue[]: Richardson, Gaul and Taylor contend that the district court erred in finding that the cocaine was cocaine

3

base and crack;". Id. at 49. In deciding the issue before the Court the First Circuit held

> In assessing the challenge to the district court's drug-type finding, we begin by briefly sketching the legal landscape of the cocaine base/crack distinction in the sentencing context, mindful that we have been over this ground many times in recent years.
> Both the statue and the Guidelines impose significantly greater penalties for distributing (or manufacturing, dispensing, or possessing with intent to manufacture, distribute, or dispense) a given quantity of 'cocaine base' rather than an equivalent quantity of 'cocaine' (i.e., cocaine hydrochloride or powder cocaine). See 21 U.S.C. § 841(b)(1)(A)(ii), (iii); U.S.S.G. § 2D1.1(c). Neither the statute nor the drug-quantity table in the Guidelines that establishes the offense level uses the word 'crack.' **Section 841(b) does not define 'cocaine base,' but we have held that the term, as used in the statute, includes all forms of cocaine base, including but not limited to crack.** See United States v. Lopez-Gil, 965 F.2d 1124, 1134 (1st Cir. 1992)(opinion on panel rehearing). As used in the Guidelines, however, 'cocaine base' has, since a 1993 amendment, a narrower meaning: "'Cocaine base' for the purposes of this guideline, means 'crack.' 'Crack is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.' U.S.S.G. § 2D1.1 Note (D). For Guidelines purpose, then, forms of cocaine base other than crack are treated as cocaine. See U.S.S.G. App. C, Amend. 487 (1993).
> Richardson was sentenced under the Guideline provision for cocaine base; his sentence therefore depended on a finding that the substance attributed to him was crack. Taylor and Gaul received mandatory minimum sentences pursuant to 21 U.S.C. § 841(b)(1)(A)(iii); their sentences therefore

4

depended on a finding that the substance attributed to them was cocaine base, but not on a finding that it was crack.

Turning to practicalities, the government may show by expert chemical analysis that a substance is cocaine base. Chemical analysis cannot establish that a substance is crack, however, because crack is chemically identical to other forms of cocaine base, although it can reveal the presence of sodium bicarbonate, which is usually used in processing crack. Lay opinion testimony suffices to prove that a substance is crack.

The government presented overwhelming evidence that the substance at issue in this case was both cocaine base and crack. DEA chemist Maureen Craig testified at the sentencing hearings that she performed multiple tests on all of the samples and positively identified them as cocaine base. Her testimony was consistent throughout. The defendants' insinuations notwithstanding, Craig made it clear that she had never found any of the samples to be cocaine hydrochloride. Although Craig may not have performed all possible tests on every sample-contrary to the defendants' contention, the record is unclear in this respect-the mere possibility of further tests goes to weight of the government's evidence and is no reason to overturn the finding of the district court.

Multiple witnesses testified that the substance was crack cocaine. Craig gave her opinion that it was crack based on the appearance of the samples and the presence in some of them of sodium bicarbonate. Government informant John Thompson testified that he purchased crack from the defendants. FBI Agent Dale Dutton testified that the cocaine was "rock-like" and yellowish or off-white in color when seized. (Dutton also testified to his opinion that it was crack, but the government disclaims reliance on that opinion because of Dutton's inexperience.) Boston Police Detective Eduardo Dominguez testified that the samples were crack, based

5

> on Dutton's testimony about its appearance
> when seized and his own observations that,
> even after being ground up for laboratory
> analysis, their consistency was still
> "gravel-like" and seventy percent was in
> large enough pieces to sell on the street as
> crack "gems." This testimony, "remarking the
> substances's distinctive appearance and
> texture and identifying it as crack, forged
> the final link in the evidentiary chain."
> The district court was also entitled to
> consider the "utter absence" of evidence that
> the substance was anything other than crack
> cocaine. The court's finding that the
> substance was cocaine base and crack "easily
> survives clear-error review."

Richardson, at 49-50(some internal citations omitted)(emphasis added).

The language quoted above regarding the distinction between the definition of cocaine base in 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1 was essential to the First Circuit's decision regarding whether the District Court erred in sentencing two defendants to minimum mandatory sentences under 21 U.S.C. § 841(b). This part of the First Circuit's decision is therefore binding on this Court. The government clearly alleged in Counts One, Three, Four, Five and Six fifty or more grams of cocaine base, therefore the mandatory statutory life sentence should be imposed.

Moreover, in this case the defendant clearly pled guilty to distributing and possessing with intent to distribute cocaine base in the form of crack cocaine. During the change of plea, regarding Count One the Court stated "the government says that you did knowingly and intentionally distribute and you did

6

possess with the intent to distribute an amount of more than 50 grams of a substance containing cocaine base, also sometimes known as crack cocaine. Are you pleading guilty because you did in fact commit that crime?" The defendant responded "Yes, I did, your Honor." The Court then said "I want to make sure that it's clear on the record that the form of cocaine base that we're talking about is crack cocaine. That's what you were distributing that day, is that correct?" The defendant responded "Yes, I was, your Honor." The Court then inquired of defense counsel "Mr. Elliott, there's no dispute about that, am I correct?" Counsel for the defendant responded "There is none, Judge." Tr. at 17. The Court made virtually identical inquiries regarding Count Three [Tr. at 18]; Count Four [Tr. at 19]; and Count Five [Tr. at 19-20].

Based upon fifty or more grams of cocaine base in the form of crack cocaine being involved in Counts One, Three, Four, Five and Six combined with the Information filed pursuant to 21 U.S.C. § 851 involving any two of the defendant's eight prior drug distribution convictions, the mandatory statutory sentence is life in prison.

III. Conclusion

Therefore, the defendant should be sentenced to the mandatory statutory sentence of life in prison.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
TODD E. NEWHOUSE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                    Springfield, Massachusetts
                                April 27, 2005

I, Todd E. Newhouse, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing, via mail to all counsel of record.

_____
TODD E. NEWHOUSE
Assistant U.S. Attorney