UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ] |
| - against - | ] |
| RAYMOND SHAVER, Defendant. | ] CR NO. 04-30003-MAP |

## AFFIDAVIT IN SUPPORT OF
## MOTION TO WITHDRAW GUILTY PLEA

I, LORI H. LEVINSON, ESQ., hereby state, under the penalties of perjury, as follows:

I am Raymond Shaver's attorney, and as such, am fully familiar with all of the facts and circumstances herein. This affidavit is based on my own personal knowledge and belief, and on my conversations with my client and his former attorney, Jonathan Elliott, a review of the discovery material provided by the government and a transcript of the November 15, 2004 plea hearing in which Mr. Shaver admitted his guilt to all of the charges in the indictment.

I was appointed to represent Mr. Shaver for sentencing purposes after his pro se motion to terminate his prior attorney, Jonathan Elliot. Sr.'s representation was allowed by this Court. At the time his motion for new counsel was allowed, Mr. Shaver was scheduled to be sentenced pursuant to his plea of guilty to a six-count indictment charging him with several distributions of cocaine and cocaine base. After his plea, a Presentence Report was prepared by the Probation Department. According to the

sentencing calculations made by both the government and Probation, and, as was made abundantly clear to Mr. Shaver during his plea allocution, his sentence appeared to be a mandatory life sentence, based on the amount of crack cocaine involved in the offenses, coupled with his prior criminal history. (T. 6,7,8,9,13,14,22,26,29,43)[1]

When I first met with Mr. Shaver at the Hampshire County House of Corrections, he told me that he had been told by the probation officer who interviewed him for his presentence report (Richard Rinaldi) that not all cocaine base is necessarily crack, and that his sentence could depend on whether it was crack or cocaine base. Mr. Shaver told me that as far as he knew, the substances alleged to have been involved in his case were cocaine base and were not what is called "crack" on the street. When I asked him why he pled guilty to "crack," he told me that that is what he was told he was pleading guilty to, and that he didn't realize that sentencing could depend on whether he said it was crack or cocaine base.

We then reviewed the laboratory reports prepared in connection with the sales in this case. Of the four sales involving alleged crack, the laboratory reports show that for two of the sales totaling approximately 99.2 and 98.8 grams gross weight, the analysis stated that the substances contained "cocaine base and procaine (salt form unknown)." For the three other sales of alleged crack, the laboratory reports show that those substances "contain cocaine base." Mr. Shaver told me that he didn't think that the substances he sold were crack – rather, he believed that they were "just cocaine base." Had he understood that there was a real and substantive difference between

---

[1] References to the transcript of the plea hearing shall be "T. __."

cocaine base and crack, Mr. Shaver advises that he would not have admitted to selling crack.

Because Mr. Shaver did not fully understand what he was pleading guilty to, his plea of guilty cannot be said to have been knowing and voluntary. Accordingly, he has advised me that he wishes to withdraw his plea of guilty to charges that he distributed and/or conspired to distribute crack.

_____
Lori H. Levinson